and we'll turn to Genger v. Genger. Thanks. Two minutes. I'm informed by the clerk that appellants want two minutes rebuttal. Yes, Your Honor. That's fine. Mr. Kasowitz. Thank you, Your Honor. May it please the Court, Mark Kasowitz for appellant Orly Genger. Your Honors, there's no diversity jurisdiction here. The Court below suspected as much when it ordered supplemental briefing on whether the parties should be realigned to determine whether diversity jurisdiction actually existed. In particular, the Court asked the parties to brief the question of what would constitute a collision of interests under this Court's realignment standard and asked Sagi to state whether he had any good faith arguments to oppose Dahlia's claims. In response, Sagi admitted that he had, quote, unquote, no viable defenses to Dahlia's claims, but he nonetheless insisted that the collision of interests test was satisfied merely because he was refusing to pay Dahlia absent a court order. In its decision, the Court below recognized what was obvious, that Sagi and Dahlia had coordinated the action against Orly and that Sagi had conceded that Dahlia's claims against him were valid and enforceable. However, the Court below nonetheless agreed that Sagi's mere refusal to pay was sufficient to constitute a collision of interests. Your Honors, respectfully, that's wrong. The decision below has the effect of eliminating the Court's obligation to look beyond the pleadings to realign the parties according to their true interests under the Supreme Court's decision in the Indianapolis v. Chase case and under this Court's decision in Maryland Casualty v. W.R. Grace. Under the lower Court's decision, coordinating parties could always manufacture diversity jurisdiction, precisely the result that those cases prohibit, by doing exactly what was done here, which is simply to say, I'm not going to pay. Here, Your Honors, the facts are indisputable that Sagi and his mother coordinated the action against Orly. They filed Dahlia's complaint and Sagi's answer and third-party claim against Orly on the same day, literally within an hour or two of each other, even before Orly was informed of the $6 million demand against her. Sagi offered no resistance whatsoever to Dahlia's summary judgment motion. Instead, he submitted a four-sentence opposition in which he admitted that he didn't have any valid defense. In order to have a final judgment entered quickly against Orly so that Sagi could undertake efforts to enforce it, Dahlia cooperated with Sagi in dismissing her remaining declaratory judgment claim without prejudice, even though that claim sought a declaration that Sagi owed her $25 million. Your Honors, there's no doubt that Sagi and Dahlia were aligned against Orly here, just as they've been aligned against Orly in family disputes and litigations going back for 15 years. Sagi's control of his mother in orchestrating these fights is also not in dispute. The record is clear that Dahlia put Sagi in charge of all her business affairs and that she doesn't intervene in anything he does because she trusts him, and further, that he has secreted offshore millions and millions of dollars in accounts on her behalf. So, Your Honor, Sagi and Dahlia need to be realigned on their own side against Orly in this dispute. And then there can't be any diversity with respect to Orly because there's no genuine material dispute that Orly was domiciled in Israel in October 2017 and was not a citizen of any state when this action was filed. Orly got married in Israel in 2016 in the fall, and shortly thereafter she moved to Israel where she's lived and been domiciled before, during, and after the commencement of this action. Now, Sagi argues that contacts that Orly has in Texas mean that she's domiciled there, but it's not at all unusual for anyone to have contacts in multiple jurisdictions these days. In fact, Sagi himself has contacts in New York, Connecticut, and Florida. And if there's any doubt about the location of Orly's domicile at the time of the commencement of this action, then the appropriate thing is to have discovery on this issue and to remand this matter for a fact-finding, not to grant a pre-answer motion for summary judgment even before the answer was filed. Now, if the case is not reversed or remanded on jurisdictional grounds, the decision below should nonetheless be reversed because there are material issues of fact that preclude summary judgment in Sagi's favor. In particular, there is absolutely nothing in the record showing that Orly ever received any amount of money attributable to the TRI shares. This issue is critical because the agreement on which Sagi's claim against Orly is based limits her liability to the money that she had received attributable to the TRI shares. The court below apparently assumed, and Sagi argues, that this issue was decided in the prior 2014 action on Dahlia's $200,000 demand. But that's not the case. The issue was neither raised nor decided in that prior case. In fact, this court, in its first decision, explicitly held that while Orly had received consideration for the letter agreement, it was deciding only whether she had received more than a peppercorn. It specifically and explicitly was not making any determination whatsoever on whether she had received money attributable to the TRI shares. Orly denies receiving any money, and there's no evidence that she did. On the other hand, there is lots of evidence that others received money. And in fact, just yesterday, Your Honors, entities controlled by Sagi and by Dahlia filed an action in the Southern District of New York where they allege and admit that none of the settlement proceeds relating to the TRI stock went to Orly. They did that yesterday, and we'd be prepared to make an additional, a supplemental submission with that pleading, of which this court can take judicial notice. All this confirms... Coincidentally, or is your client also being sued in some capacity in that action? The client is being sued in that action by entities that are controlled by Sagi and by Dahlia, Your Honor. Okay. She's not? I'm sorry, Your Honor. I misspoke. She's not. Now, all this just confirms this issue, which this court has specifically held has not been decided, that needs to be decided through discovery and through a fact-finding, and that's why this decision, which was reached in a, you know, before there was any discovery whatsoever, needs to be reversed. The other issue of fact that's never been resolved and needs to be is whether Dahlia's demand for $6 million is otherwise permissible under the agreement. The agreement's very clear that... Whether she's acted in good faith. Pardon me? Whether she's acted in good faith in demanding it. Is that the claim? Not only whether she's acting in good faith in demanding it, but whether or not the money is being requested for the purpose of lifestyle rather than for another purpose. It's both a breach of an implied... Not a breach, it's to determine whether or not it's appropriate under an implied condition, but also under the explicit condition that the agreement has that money can only be requested for lifestyle purposes. And the argument that Sagi makes that she has total discretion, that begs the point. She has discretion to make a determination about lifestyle expenditures, but only if they're lifestyle expenditures. They're limited by being lifestyle expenditures. And in this instance, there's very, very significant evidence for the proposition that this was not for lifestyle purposes, Your Honors. There was, five years ago, there was a $200,000 request. Then, all of a sudden, there's a $6 million request. And the conclusion is inescapable that these requests are not, and this is all years after the agreement was entered into where, for a decade, there were no requests whatsoever. Thanks, Mr. Kasowitz. You've reserved some time, and I gather you or Mr. Bowen will... I don't think there's any reply. Well, no. They indicated they wanted two, in fact. Two minutes, Your Honor. Yeah. Thank you. One or another view will be up. Thank you, Your Honor. Thank you. Good afternoon, Your Honors. John Dellaportis for the appellee and third-party plaintiff, Sagi Ganger. For clarity, I'm going to use the Court's custom and refer to everyone by their given names, if that's okay, because they're all Gangers. What's being asked here is an extraordinary argument that they can't cite any case which is ever done. I'm speaking of diversity jurisdiction. Basically, they're saying that Orly is an Israeli domicile, which will show she's not, that as a third-party defendant, she should be realigned into the main action in such a way as to kill diversity. As the court found in Viacom, this court found in Viacom, third-party defendants are not considered for purposes of diversity. They just never are. There's no law to the contrary. They don't cite any law to the contrary. It is controlling precedent in the circuit. Beyond that, there's an issue here of appellate jurisdiction, which Mr. Kasowitz did not address. We have two judgments here. We have a $6 million judgment from Dahlia against Sagi for the main claim, and then there's a $3 million judgment for Orly's half-indemnity. So the first-party action judgment was never appealed, and it's final. So to the extent that we're now hearing arguments... She's able to, Orly, that is, is able to challenge that in her own answer because she can step into Sagi's shoes. Isn't that correct? That's exactly right, but she did not do that. That is the crux of what we're arguing here. She wasn't required to file her answer before first pursuing her motion. When Dahlia moved for summary judgment, at that stage, if not earlier, Orly had an obligation to step in with any defenses that she thought was necessary. I'm not sure where that is so clearly established. I thought that she could, when she herself is the subject of a legal action, in that action she can raise a defense to Dahlia's claim. Isn't that right? That leaves Sagi with whatever he wished to argue or not argue against his mother, but she still retains her right to say to Sagi, I'm not liable to you because you and Dahlia colluded to make a bad faith claim. Your Honor, in Atlantic Richfield v. Interstate Oil Transport, which cited in our brief, this court ruled that if the indemnador declines to take over the defense, the indemnity is required to prove only its potential liability to the plaintiff. We tendered the defense from the very beginning. In fact, the reason why we didn't pay, one of the main reasons, was because in the prior action, Orly, this is our second time before this court, the prior time we were before this court, Orly, with the same legal team, mind you, argued the exact opposite. In the last go-around, Dahlia made the demand, Sagi paid the demand, Sagi asked Orly for money, and Orly argued to this court that she was denied her opportunity to defend because Sagi paid. Now this court declined the argument, but then afterwards Orly continued to repudiate. So now we have the exact opposite position. Mr. Kazowitz has come here and argued because Sagi has declined to pay, even though based on the Second Circuit's prior decision there was no valid defense here, nevertheless, that creates a jurisdictional void, and that's just wrong. If Orly wanted to defend the claim, she had to step in and defend the claim. There were seven months transpired between when the first lawsuit was filed and Dahlia moved for summary judgment. During that time, Orly filed three motions to dismiss. She ducked service. We served her in her Texas home. She said not good enough. We served her in her New Jersey home. She said not good enough. She could only be sued in Israel, she said, and she wouldn't give us the address. We had to hire a private investigator to find some home in the name of a corporation registered to her sister-in-law. So basically for seven months we tried to get her to step in and take the defense if that's what she wanted to do, and she didn't do it. The law is crystal clear that if I'm indemnified or insured, same concept, and the insurer doesn't step in but messes around for seven months, I can settle the claim, I can default on the claim, I can fight on the claim, and whatever I do, the indemnitor is stuck with. The only thing the indemnitor can do is challenge the indemnity. And in this case, you can read their entire two briefs. There is not a single challenge to the actual indemnity, nor can there be because this court found the indemnity to be valid last time around. All they're saying are challenges to how the first-party action proceeded. That's not in their notice of appeal. Nobody appealed it. The first-party action is final, and there's nothing more to say about it. Now, their whole theory is premised on the notion that we knew Orly lives in Israel and we were trying to create some strange procedural structure to avoid jurisdiction. That's nonsense. She didn't even say she lived in Israel until like five months into the case. So Orly's claim is that she moved to Israel for her marriage in September 2006. Well, you know, since then we've had some extraordinary post-judgment discovery. We found out that in her premarital agreement, she committed to maintain her domicile, that's the word she uses, in Texas. And then after she got married, she got a Texas driver's license, a Texas voter registration card. She got half of a Texas home, which she declared as her homestead. She still declares it as her homestead on her property taxes. When I deposed her post-judgment, I offered to go to Tel Aviv, and she said, no, take my deposition in Austin, which was nice. I appreciate it. So, oh, and most importantly, two weeks before we filed suit, Orly declared herself a Texas resident to the IRS. That's the beginning and the end of the story. How did she do that? What's that? How did she do that? On her tax returns where it says, where's your home, she lists Austin, Texas. It's something we got in post-judgment discovery, but it's on the docket, and the court can take judicial notice. And there's a string of case law that says when you tell the IRS you live in State A, you can't then tell a federal court that you live someplace else. You're stopped. It's not merely persuasive evidence like the driver's license and the voter registration card and the home and everything else. You're done. You can't tell the IRS one thing and somebody else something else. And so if you accept that Orly is a Texas resident, then this whole rigmarole about realignment becomes irrelevant because what happens is Sagi is either a Florida or Connecticut resident, depending on which home. Dolly is a New York resident, and Orly is a Texas resident. However one chooses to realign them, you have complete diversity in this action. Now, let me quickly turn to the other matter, which is, did Orly get the money? Orly filed a lawsuit. Before you get to that, I want to take you back to your view that Orly lost her opportunity. When she was opposing summary judgment by Sagi, one of her arguments was she had not yet had the opportunity to pursue discovery relating to Dolly's claims. It seems to me to be a complaint that she hadn't had an opportunity to pursue a defense to Dolly's claims. Why isn't that enough? Well, two things. One, she only opposed Sagi's motion for summary judgment. I'm sorry, she only? Opposed Sagi's motion. Yes, but the basis for her opposition was that she had not had the opportunity to get discovery about Dolly's good faith, which was the, in short, she couldn't say that Sagi had no basis for summary judgment because she hadn't been given her opportunity to defend on Dolly's yet. All these motions, after all, were filed at the same time. Your Honor, that only becomes relevant if she steps in to take Sagi's defense, and she did not step in. You can't sit on the sidelines as an insurer or an indemnitor and say, you know, I might, I want to see how this thing plays out. She didn't have an insurance contract with Sagi that obligated her to defend. She had an indemnification obligation. Yes. So I'm not sure where your basis is for telling us she had to come in and defend. She did not have to come in and defend. If she wanted to challenge the validity of Dolly's $6 million claim, then she had to come in and defend. If she wanted to sit on her heels and simply challenge the $3 million indemnity that arose from the $6 million claim, that she could do. When she wanted to defend the indemnity, her argument was, I haven't had an opportunity to pursue a defense to Dolly's claims yet, so please don't enter summary judgment against me. Yes, but she didn't oppose Dolly's motion. At that point, she had to file an opposition to Dolly's motion. She couldn't let it go to judgment. She let it go to judgment, and now she hasn't appealed that judgment. That judgment's final. So, you know, I don't know. Sagi has an— Our sister circuits have said that it's not required that you appeal the first-party judgment. A third-party, the Fifth Circuit, in a case we've cited approvingly to, says that a third-party defendant may appeal a third-party judgment by urging error in the main case, even when it designates the third-party judgment as the only judgment it's appealing from. Your Honor, one more point, if I may, very quickly. The only thing they're arguing here is this good-faith defense, which this panel directly rejected the last time around. As to $200,000, not as to $6 million. Understood, Your Honor. But the principle is the same. There's sole and absolute discretion. There may have been no basis to think that a $200,000 lifestyle claim was not in good faith, but a $6 million claim when nothing anywhere close to that has ever been sought may warrant some discovery. Your Honor, we believe the case law is clear that when you put in sole and absolute discretion, that's what it means. It's sole and absolute discretion. Don't all contracts have clauses of good faith? All contracts have an implied covenant of a good faith and fair dealing. The purpose of the implied covenant is to make sure that the purpose of the underlying contract is enforced, not to make sure that it's, they're using it here to undermine it, to say Dahlia doesn't get her financial support because they think she doesn't need all that money. That's not what the implied covenant is about. I'm just suggesting to you that our prior Ganger decisions may not answer the question here. Your Honor, the case law was exactly the same then as now and was cited then as now, which is that when there is sole and absolute discretion, what that means is you don't use the implied covenant of good faith and fair dealing to undermine that discretion. That's why parties put that in the contract. It's up for Dahlia to determine whether, you know, what she needs to survive. Now, she did put in an affidavit where she explained that she's been, she got divorced in 2004. She hasn't gotten any alimony since then. She used to live a very nice life when she was the wife of a CEO, and she only has a house with two mortgages on it. She put in an affidavit. They didn't rebut it. They were seven months into the case to do whatever they wanted to do, and we were at summary judgment. At summary judgment, you have to be more specific than just say, well, there could be a bad faith claim out there. Under a rule, they've changed the subheading, but I think it was Rule 56F Affidavit. It may be a different subsection now. But when you put in your Rule 56 Affidavit, you have to very clearly state what exactly it is that you think can defeat summary judgment if you take discovery. You can't just make blanket statements about bad faith. She's heard about it. Of course, Your Honor. Thank you. All right. Mr. Bowen or Mr. Kasiewicz, two minutes. Yes, thank you. I'll be very quick. First, with respect to that last claim, the issue is not at all whatever Dahlia needs for lifestyle. The issue is whether or not the funds are being demanded for purposes of a lifestyle or for another purpose, namely collaborating with Sagi to try to do damage to Orly. So it has nothing to do with how she's spending money on her lifestyle. It has the good faith application as to whether or not it's being used even for lifestyle purposes in the first instance. As to the issue of indemnity and indemnit or, it's just not an issue, wasn't an issue in this case. The question of, Your Honor is correct that this is not an insurance contract. Right. But the rule, 14A2C, gives you the right to assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claims. And they're arguing that you had to come in and challenge Dahlia's claim and that you never did that. Do you want to respond to that? Yeah. We weren't a defendant even in that matter. No, no. The rule is that the third-party defendant, you were the third-party defendant. Sagi had sued you. Correct. That gives you the right to assert against the plaintiff, against Dahlia, any defense that Sagi might have had. Right, but not the obligation. But you didn't do that. It's the argument. The right but not the obligation, Your Honor. And, in fact, that was never, that's not even an issue in the court below. That was never addressed in Judge Forrest's decision whatsoever. So this is a, look, I don't, Sagi is looking for some way out, some way to avoid a fact-finding which is appropriate. Even Judge Forrest understood that there needed to be a fact-finding here in the last instance, that there were issues of fact as to good faith, that there were issues of fact as to the realignment of the parties and the like. And that we submit is exactly what the, what is required here. All right. Thank you very much, Mr. Chief. Thank you, Your Honor. Reserve decision.